# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

ANTONIO ENRIQUEZ,

     Plaintiff

v.

STATE OF NEVADA DEPARTMENT OF
CORRECTIONS, et al.,

     Defendants

Case No.: 3:21-cv-00085-ART-CSD

**Report & Recommendation of
United States Magistrate Judge**

Re: ECF Nos. 37, 48

This Report and Recommendation is made to the Honorable Anne R. Traum, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Plaintiff's motion for summary judgment. (ECF No. 37.) Defendants filed a response. (ECF No. 45.) Plaintiff filed a reply. (ECF No. 47.) Also before the court is Defendants' motion for summary judgment. (ECF Nos. 48, 48-1 to 48-13.) Plaintiff filed a response. (ECF No. 50.) Defendants have not filed a reply brief.

After a thorough review, it is recommended that Plaintiff's motion be denied, and Defendants' motion be granted in part and denied in part.

## I. BACKGROUND

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc. (Compl., ECF No. 4.) The events giving rise to this action took place while Plaintiff was housed at Lovelock Correctional Center (LCC). (*Id.*)

1    The court screened Plaintiff's complaint and allowed him to proceed with claims under

2 RLUIPA and the First Amendment's Free Exercise and Establishment Clauses, against Williams,

3 Wickham, Garrett, and Waters. Plaintiff, a Messianic Jew, alleges that Defendants denied him

4 the ability to request and receive certified leaven-free meals, matzah, and grape juice during

5 Passover 2020. He claims that Williams sent a memo informing inmates that NDOC was going

6 to use its Common Fare Menu (CFM) as a religious sincerity test to receive Passover meals in

7 2020. While Plaintiff had been approved to receive Passover meals in the past, he was denied the

8 ability to receive the Passover meals in 2020 because he had not been on the CFM list. Plaintiff

9 claims that NDOC's policy favors Orthodox/Rabbinical Judaism over Messianic Judaism

10 because NDOC used Orthodox/Rabbinical Judaism tenets to determine who would receive

11 Passover meals in 2020. Plaintiff avers that the CFM is "kosher" according to

12 Orthodox/Rabbinical Judaism, but that it has no bearing on the tenets of Messianic Judaism,

13 which requires certified leaven-free matzah, grape juice, and bitter herbs. (ECF No. 3.)[1]

14    Plaintiff moves for summary judgment, arguing that Defendants substantially burdened

15 his religious exercise and preferred one faith group over another when they implemented a

16 change regarding Passover meals in 2020 that required an inmate to be on CFM to receive all

17 Passover meals.

18    Defendants oppose Plaintiff's motion and move for summary judgment, arguing:

19 Defendants did not violate Plaintiff's rights; Defendants Garrett and Waters did not personally

20

---

21 [1] The court dismissed with prejudice all claims against NDOC, and the undersigned
recommended denial of Plaintiff's request, in essence, for reconsideration of this ruling. The

22 court recommended, however, that if the report and recommendation is adopted, that Plaintiff be
given leave to amend solely to include allegations with respect to Chaplain Davis. (ECF No. 28.)

23 Plaintiff filed an objection to ECF No. 28 (ECF No. 32), Defendants filed a response (ECF No.
35), and Plaintiff filed a reply (ECF No. 36); however, as of the time this Report and
Recommendation was issued, there has not been a ruling on Plaintiff's objection.

participate in any constitutional violation; and Defendants are entitled to qualified immunity on all claims except the RLUIPA claim (which is limited to injunctive relief).

## II. LEGAL STANDARD

The legal standard governing this motion is well settled: a party is entitled to summary judgment when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome of the case. *Id*. at 248 (disputes over facts that might affect the outcome will preclude summary judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250.

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477 U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that one party must prevail as a matter of law"). In considering a motion for summary judgment, all reasonable inferences are drawn in the light most favorable to the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach & Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,*

1    477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and

2    determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255;

3    *Anderson*, 477 U.S. at 249.

4          In deciding a motion for summary judgment, the court applies a burden-shifting analysis.

5    "When the party moving for summary judgment would bear the burden of proof at trial, 'it must

6    come forward with evidence which would entitle it to a directed verdict if the evidence went

7    uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing

8    the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp.*

9    *Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations

10   omitted). In contrast, when the nonmoving party bears the burden of proving the claim or

11   defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate

12   an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving

13   party cannot establish an element essential to that party's case on which that party will have the

14   burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

15         If the moving party satisfies its initial burden, the burden shifts to the opposing party to

16   establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v.*

17   *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine

18   dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute

19   be shown to require a jury or judge to resolve the parties' differing versions of truth at trial."

20   *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)

21   (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment

22   by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475

23   U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the

pleadings and set forth specific facts by producing competent evidence that shows a genuine

dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

### III. DISCUSSION

**A. Facts**

Since 2016, Plaintiff's faith declaration has been Messianic Judaism. (ECF No. 48-1 at

2.) As part of his faith, Plaintiff requires matzah, unleavened bread, bitter herbs, and wine/grape

juice during Passover.

A notice was issued to those who wished to participate in Passover in 2020 (including all

Hebrew Israelites, Messianic and Orthodox Jews), stating they must sign up by sending a request

(known as a "kite") to the chaplain to be placed on the Passover list by January 24. The inmates

were required to have a declaration of either Messianic Jewish or Jewish on file. (ECF No. 37 at

29.) At some point, Plaintiff's name was included on the Passover list. (ECF No. 37 at 31.)

On January 24, 2020, Richard Snyder, who was a chaplain and chairman of NDOC's

Religious Review Team (RRT), sent an email stating that in years past, inmates eligible for CFM

who chose not to receive CFM on a regular basis were able to receive the 12 days[2] of kosher

meals during Passover at no cost. Snyder advised that a change was being implemented

regarding Passover meals. Effective in 2020, inmates who were not receiving CFM on a regular

basis and who request to participate in Passover meals would only receive the dinner meal on the

last day of Passover. (ECF No. 37 at 70; ECF No. 48-2.)

A culinary memo was issued to Plaintiff as a "Passover non-CFM participant," and

Plaintiff was advised, consistent with Snyder's email, that in 2020, inmates not receiving CFM

---

[2] According to Plaintiff, and some of the discovery responses of Defendants, Passover is eight
days.

who request to participate in Passover would receive one meal during the last night of Passover. (ECF No. 48-3 at 2.)

Plaintiff submitted a kite on February 3, 2020, to LCC's Chaplain Davis, asking whether, despite his religious faith declaration of Messianic Judaism, he would not be supplied with matzah and certified leaven-free meals for the duration of Passover because he was not signed up for the CFM diet. Chaplain Davis responded that it was "determined by Carson City that those not already on [CFM] will only be receiving the last meal for [ ] Passover. Culinary is abiding by their determination with no exceptions." (ECF No. 48-4 at 2.)

On February 7, 2020, Plaintiff submitted an informal level grievance, asking NDOC to provide him with meals necessary to observe Passover in accordance with his sincerely held beliefs as an adherent of Messianic Judaism. Plaintiff asserted that he must observe Passover and during that time he must not eat leaven or leavening agents. Plaintiff noted he had no problems receiving his Passover meals in years past. (ECF No. 48-6 at 2-5.)

On March 3, 2020, defendant Deputy Director Brian Williams issued a memorandum regarding Passover 2020. He advised that NDOC's CFM meets the religious diet restrictions of all religions recognized by NDOC, including that it is kosher for all times of the year with the exception of Passover season, as kosher for Passover restrictions are different than those during the rest of the year. For an inmate to receive a kosher for Passover meal: (1) the institutional chaplain must verify the inmate's declared faith is Jewish; and (2) the inmate had to sign up for CFM no later than 7 days prior to the start of Passover. The memorandum went on to state that for that year only (2020), NDOC was "attempting to obtain additional kosher for Passover meals as to permit Jewish inmates who are sincere about their religious beliefs of keeping kosher for Passover to participate in the Passover meal program regardless of whether both of the two steps

noted above have been appropriately complied with by the inmate." This was described as a "one-time accommodation" and beginning in 2021, "all inmates who desire to participate in the Passover meal program must be identified as Jewish (step 1) and be on the CFM at the time of Passover (step 2)." To take advantage of the exception, inmates were instructed that they "must inform the institutional chaplain at [his] facility via inmate request form/kite within two calendar days of receiving this memo." Finally, it was noted that NDOC was contacting the approved vendor(s) in an attempt to make this one-time accommodation. However, as of the date of the memorandum, there was no assurance from the vendor(s) that the meals would be able to be provided prior to Passover. (ECF No. 48-5 at 2.)

Having not received a response to his informal level grievance, Plaintiff filed a first level grievance on March 31, 2020. (ECF No. 48-6.)

On April 8, 2020, Waters responded to Plaintiff's informal level grievance, stating in pertinent part:

> Information available through Jewish Voice Ministries indicates that while some Messianic Jews do follow Jewish dietary laws, that there is no such requirement for Messianic Jews to observe Jewish dietary laws. Those who do not participate in the [CFM] but then want to participate in the special food available during Passover have additional questions raised about the sincerity of their beliefs on this subject. It appears that your desire to participate in the Kosher for Passover meals is a matter of personal preference. Your grievance is denied.

(ECF No. 48-6 at 7.)

Plaintiff filed a second level grievance on July 22, 2020. (ECF No. 48-6 at 11-14.)

Garrett denied Plaintiff's first level grievance on November 24, 2020, asserting that Plaintiff had not been on CFM, and did not qualify for Passover meals for all days according to the new directive. It asserted that Plaintiff had time to "comply with this change," presumably referring to the requirement that he sign up for CFM to receive all Passover meals. Finally, he

reiterated Waters' stance that there were questions raised about the sincerity of his beliefs. (ECF No. 48-6 at 10.)

Wickham denied Plaintiff's second level grievance on January 20, 2021. He noted the NDOC policy change regarding Passover meals in 2020, and that Plaintiff was not receiving CFM. Therefore, Plaintiff did not qualify for kosher meals for all days of Passover 2020. He reiterated the prior response that not receiving CFM on a regular basis and then requesting to participate in Passover results in "additional questions [being] raised about the sincerity of [his] beliefs regarding this issue." (ECF No. 48-6 at 15.)

According to Deputy Director Williams, beginning in 2023, NDOC will no longer require that inmates sign up for CFM in order to receive Kosher meals for every day of Passover, and NDOC is in the process of updating its Administrative Regulations (ARs) to reflect this. (Williams Decl., ECF No. 48-7 at 3 ¶ 8.)

**B. Exhaustion**

Defendants argue they should be granted summary judgment because Plaintiff failed to properly exhaust his administrative remedies. They contend that while Plaintiff pursued an inmate grievance through all applicable levels, AR 810 required that he submit a written request to the chaplain at least 60, but no more than 70 days, in advance of Passover before filing a grievance.

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). An inmate must exhaust his

1    administrative remedies irrespective of the forms of relief sought and offered through

2    administrative avenues. *Booth v. Churner*, 532 U.S. 731, 741 (2001).

3        The failure to exhaust administrative remedies is "'an affirmative defense the defendant

4    must plead and prove.'" *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (quoting *Jones v.*

5    *Bock*, 549 U.S. 199, 204, 216 (2007). Once a defendant shows that the plaintiff did not exhaust

6    available administrative remedies, the burden shifts to the plaintiff  "to come forward with

7    evidence showing that there is something in his particular case that made the existing and

8    generally available administrative remedies effectively unavailable to him." *Id*. at 1172 (citing

9    *Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n. 5 (9th Cir. 1996)).

10        Exhaustion cannot be satisfied by filing an untimely or otherwise procedurally infirm

11    grievance, but rather, the PLRA requires "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 89

12    (2006). "Proper exhaustion" refers to "using all steps the agency holds out, and doing so

13    *properly* (so that the agency addresses the issues on the merits)." *Id*. (emphasis in original)

14    (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). Thus, "[s]ection 1997e(a)

15    requires an inmate not only to pursue every available step of the prison grievance process but

16    also to adhere to the 'critical procedural rules' of that process." *Reyes v. Smith*, 810 F.3d 654,

17    657 (9th Cir. 2016) (quoting *Woodford*, 548 U.S. at 90). "[I]t is the prison's requirements, and

18    not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199,

19    218 (2007). That being said, an inmate exhausts available administrative remedies "under the

20    PLRA despite failing to comply with a procedural rule if prison officials ignore the procedural

21    problem and render a decision on the merits of the grievance at each available step of the

22    administrative process." *Reyes*, 810 F.3d at 658.

23

AR 740 contains NDOC's inmate grievance procedure. An inmate must proceed through three levels to complete the grievance process with respect to a particular issue: informal, first, and second levels. (ECF No. 48-13.)

AR 810 does state that if an inmate wishes to receive special holy day food for a recognized holy day, before filing a grievance, he must submit a written request to the chaplain via a kite, at least 60 but no more than 70 days in advance of the holy day. (ECF No. 48-8 at 18-19.)

There is no dispute that Plaintiff filed a grievance regarding his claim he did not get all of his Passover meals in 2020, and that this grievance was completed through all levels. (ECF No. 47 at 8-17.) None of those grievances were denied because Plaintiff failed to comply with AR 810's requirement to submit a written request for Passover meals. As such,  prison officials ignored the procedural defect and rendered a decision on the merits of the grievance at each available step; therefore, Plaintiff exhausted his administrative remedies. *Reyes*, 810 F.3d at 658.

Moreover, Plaintiff presents evidence suggesting he did submit a requests to participate in Passover in 2020. He provides a memorandum for 2020 Passover participants, advising them that they were required to sign up by January 24, 2020, to participate in Passover 2020, as well as a document showing his name on the Passover list. (ECF No. 37 at 29, 31.)

To the extent Defendants argue they are entitled to summary judgment because Plaintiff failed to properly exhaust administrative remedies, their motion should be denied.

///

**C. First Amendment Free Exercise & RLUIPA**

    **1. Standards**

        **a. First Amendment Free Exercise Clause**

    "The First Amendment, applicable to state action by incorporation through the Fourteenth Amendment...prohibits government from making a law prohibiting the free exercise [of religion]." *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013) (citations and quotation marks omitted, alteration original). "The right to exercise religious practices and beliefs does not terminate at the prison door. The free exercise right, however, is necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security." *McElyea v. Babbitt*, 833 F.2d 196, 197 (9th Cir. 1987) (per curiam); *see also O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987); *Cruz v. Beto*, 405 U.S. 319, 322 (1972); *Hartmann*, 707 F.3d at 1122; *Shakur v. Schriro*, 514 F.3d 878, 883-84 (9th Cir. 2008).

    To implicate the Free Exercise Clause, a prisoner must first establish his belief is both sincerely held and rooted in religious belief. *See Shakur*, 514 F.3d at 884-85. "The Free Exercise Clause does not require plaintiffs to prove the centrality or consistency of their religious practice: 'It is not within the judicial ken to question the centrality of particular beliefs or practices to a faith.'" *Jones v. Slade,* 23 F.4th 1124, 1145 (9th Cir. 2022) (quoting *Hernandez v. Comm'r of Internal Revenue*, 490 U.S. 680, 689 (1989)). The test is whether the plaintiff sincerely believes the conduct at issue is consistent with his faith. *Id*. (citation omitted).

    Next, "a person asserting a free exercise claim must show that the government action in question substantially burdens the person's practice of her religion." *Jones v. Williams,* 791 F.3d

1  1023, 1032 (9th Cir. 2015) (citing *Graham v. C.I.R.*, 822 F.2d 844, 851 (9th Cir. 1987), *aff'd sub*

2  *nom. Hernandez*, 490 U.S. at 699).

3       "Once a claimant demonstrates that the challenged regulation impinges on his sincerely

4  held religious exercise, the burden shifts to the government to show that the regulation is

5  'reasonably related to legitimate penological interests.'" *Jones,* 23 F.4th at 1144 (quoting *Walker*

6  *v. Beard*, 789 F.3d 1125, 1138 (9th Cir. 2015)).

7       **b. RLUIPA**

8       No government shall impose a substantial burden on the religious
         exercise of a person residing in or confined to an institution...even
9       if the burden results from a rule of general applicability, unless the
         government demonstrates that imposition of the burden on that
10      person--(1) is in furtherance of a compelling governmental interest;
         and (2) is the least restrictive means of furthering that compelling
11      governmental interest.

12  42 U.S.C. § 2000cc-1(a). RLUIPA is "more generous to the religiously observant than the Free

13  Exercise Clause." *Jones v. Slade,* 23 F.4th 1124, 1139 (9th Cir. 2022) (citations omitted).

14       "The Supreme Court has recognized RLUIPA as...[a] 'congressional effort[] to accord

15  religious exercise heightened protection from government-imposed burdens[.]'" *Greene* v.

16  *Solano Cnty. Jail*, 513 F.3d 982, 986 (9th Cir. 2008) (quoting *Cutter v. Wilkinson*, 544 U.S. 709,

17  714 (2005)). "As such, RLUIPA is to be 'construed broadly in favor of protecting an inmate's

18  right to exercise his religious beliefs.'" *Jones,* 23 F.4th at 1140 (quoting *Warsoldier v.*

19  *Woodford,* 418 F.3d 989, 995 (9th Cir. 2005)); *see also Johnson v. Baker,* 23 F.4th 1209, 1214

20  (9th Cir. 2022) (citation omitted). However, "[c]ourts are expected to apply RLUIPA's standard

21  with due deference to the experience and expertise of prison and jail administrators in

22  establishing necessary regulations and procedures to maintain good order, security and

23  discipline, consistent with consideration of costs and limited resources." *Hartmann v. Cal. Dep't.*

*of Corr.*, 707 F.3d 1114, 1124 (9th Cir. 2013) (internal quotation marks and citation omitted).

"Under RLUIPA, the challenging party bears the initial burden of proving that his religious exercise is grounded in a sincerely held religious belief ..., and that the government's action substantially burdens his religious exercise." *Holt v. Hobbs*, 574 U.S. 352, 360-61 (2015) (citations omitted); *see also Jones,* 23 F.4th at 1140; *Johnson,* 23 F.4th at 1214.

If the plaintiff makes a showing of a substantial burden on the exercise of his religion, the court's analysis then turns to whether the defendant has established that the burden furthers "a compelling governmental interest," and does so "by the least restrictive means." 42 U.S.C. § 2000cc-1(a), (b); *Holt,* 574 U.S. at 362 (citation omitted); *Jones,* 23 F.4th at 1141 (citations omitted); *Greene*, 513 F.3d at 988.

## 2. Analysis

### a. Sincerely Held Religious Belief

Despite the grievance responses questioning the sincerity of Plaintiff's religious belief, neither Defendants' motion nor their response to Plaintiff's motion disputes that Plaintiff, an adherent of Messianic Judaism, has a sincerely held religious belief in receiving certified leaven-free meals, matzah and grape juice during Passover. (ECF Nos. 45, 48.) Therefore, the court will turn to whether Defendants substantially burdened Plaintiff's religious exercise.

### b. Substantial Burden

Plaintiff argues that Defendants substantially burdened his religious exercise when NDOC implemented the policy in 2020 that inmates not receiving CFM on a regular basis would only receive one meal during Passover, even though AR 810 does not require an inmate to receive CFM in order to obtain his Passover meals.[3]

---

[3] He also argues that NDOC regulations did not allow the RRT to create this policy. However, the mere violation of prison regulations does not necessarily give rise to a constitutional violation.

Defendants argue that they did not substantially burden Plaintiff's religious exercise. They acknowledge that in 2020, for inmates to receive kosher Passover meals, they were required to have the chaplain verify that their declared faith was Jewish, and they had to sign up for CFM no later than 7 days prior to the start of Passover. In addition, however, inmates could receive kosher for Passover meals in 2020 without signing up for CFM if they informed the chaplain within two days of the March 3, 2020, memorandum.

Plaintiff's faith, unlike Orthodox/Rabbinical Judaism, did not require participation in CFM. The Ninth Circuit has held that requiring an inmate to choose between a benefit (here, a non-CFM diet) and a tenant of his religion (leaven-free meals for all of Passover) can constitute a substantial burden. "More subtly, a regulation may impact religious exercise indirectly, by encouraging an inmate to do that which he is religiously prohibited or discouraged from doing … or by discouraging an inmate from doing that which he is religiously compelled or encouraged to do[.]" *Jones v. Slade*, 23 F.4th 1124, 1140 (9th Cir. 2022) (citing *Greenhill v. Clarke*, 944 F.3d 243, 250-51 (4th Cir. 2019) (withholding participation in religious services "as an incentive to improve inmate conduct"), (*Jones v. Carter*, 915 F.3d 1147, 1150-51 (7th Cir. 2019) (discouraging inmates from choosing halal meals by charging for halal meat); *Shilling v. Crawford*, 536 F.Supp.2d 1227, 1233 (D. Nev. 2008), *aff'd* 377 F.Appx. 702 (9th Cir. 2010) (offering Jewish prisoner the choice of staying at a medium security facility without kosher meals or transferring to a maximum security facility with kosher meals), *Sherbert*, 374 U.S. at 404 (holding that state may  not force a person "to choose between following the precepts of her religion and forfeiting benefits … Governmental imposition of such a choice puts the same kind of burden upon the free exercise of religious as would a fine imposed against [ a person] for her … worship")).

14

Defendants argue there was no substantial burden because NDOC offered those Jewish inmates not participating in CFM the opportunity to receive all Passover meals, as a one-time exception in 2020, if they sent a kite to the chaplain within two days of the March 3, 2020, memorandum.

Plaintiff does not address whether he sent the chaplain a kite to receive Passover meals as a Jewish inmate not receiving CFM within two days of the March 3, 2020, memorandum. However, the memorandum itself acknowledged there was no guarantee they could get enough Passover meals from the vendors in time. Defendants provide no evidence they were able to secure meals for the non-CFM Jewish inmates who wished to participate in Passover 2020. Plaintiff, on the other hand, provides evidence that another inmate at LCC signed up for CFM to get his Passover meals well in advance of the 7-day deadline set by the memorandum, only to be told LCC could not secure the Passover meals. (ECF No. 47 at 29, 30.) Therefore, there is a factual issue with respect to whether Defendants could have fulfilled their promise to provide non-CFM inmates with all Passover meals.

In sum, there are material factual disputes regarding whether Plaintiff's religious exercise was substantially burdened.

### c. Free Exercise – Is the burden reasonably related to legitimate penological interests?

Assuming Plaintiff's religious exercise has been substantially burdened, the burden shifts to Defendants to show their conduct is "reasonably related to legitimate penological interests." *Jones*, 23 F.4th at 1144 (citation and quotation marks omitted).

In analyzing the legitimacy of regulation of a prisoner's religious expression, the court is instructed to utilize the "reasonableness" factors set forth in *Turner v. Safley*, 482 U.S. 78 (1987).

1  *See O'Lone*, 482 U.S. at 349; *Jones*, 791 F.3d at 1032; *Shakur*, 514 F.3d at 884. The *Turner*

2  reasonableness factors are: (1) is there a "'valid, rational connection' between the prison

3  regulation and the legitimate governmental interest put forward to justify it"; (2) "whether there

4  are alternative means of exercising the right that remain open to prison inmates"; (3) "the impact

5  accommodation of the asserted constitutional right will have on guards and other inmates, and on

6  the allocation of prison resources generally"; and (4) the "absence of ready alternatives" and "the

7  existence of obvious, easy alternatives." *Turner*, 482 U.S. at 89-91; *see also O'Lone*, 482 U.S. at

8  349.

9        Defendants argue that the March 3, 2020, memorandum was reasonably related to

10  legitimate penological interests because the purpose behind the 2020 mandate was to address a

11  lack of clarity regarding the process for inmates to obtain Passover meals, and to ensure that

12  inmates who received Passover meals had a sincere religious belief of keeping kosher for

13  Passover. In addition, they assert the directive would prevent religiously insincere inmates from

14  receiving Passover meals, thereby keeping down the costs of procuring extra Passover meals.

15  (ECF No. 45 at 9.) Defendants contend they provided alternative means for Plaintiff to exercise

16  his religious beliefs, by submitting a kite to the chaplain to receive the meals without signing up

17  for CFM. Finally, they argue there were no ready alternatives for the directive.

18        First, the court finds there is a dispute regarding whether there was a valid, rational

19  connection between the 2020 Passover directive and the legitimate governmental interest put

20  forward to justify it. Defendants claim they were addressing a lack of clarity regarding the

21  process to obtain Passover meals, but they never explain what was not clear about the process.

22  Next, they assert they wanted to prevent the religiously insincere from obtaining Passover meals,

23  but they provide no evidence that this was a problem with respect to Passover meals or with

respect to Plaintiff specifically. *See Friedman v. Arizona,* 912 F.2d 328, 332-33 (9th Cir. 1990) (evidence of anticipated problems, even though no actual problems have arisen from the prisoner's conduct, is insufficient to meet this standard). They do not dispute here that Plaintiff had a sincere belief in receiving leaven-free meals for all days of Passover. They also acknowledge that AR 810 does not require an inmate to be on the CFM diet in order to participate in Passover. In addition, they ignore the fact that Plaintiff received all of his Passover meals up to 2020, and NDOC has since decided to do away with this directive.

Second, Defendants argue that Plaintiff could have submitted a kite to the chaplain to receive his Passover meals without signing up for CFM, but there is a dispute regarding whether Plaintiff would have received the meals had he done so. Again, another alternative was to provide Messianic Judaism adherents, whether signed up for CFM or not, with all Passover meals—a process they followed in the past, and being implemented again in 2023.

Third, Defendants argue that allowing insincere inmates to obtain Passover meals would increase costs; however, they do not assert that Plaintiff's belief was insincere. Moreover, the memorandum represented that they would order the meals anyway, and incur the cost (assuming the vendor could supply them) if the non-CFM inmate made a timely request to the chaplain.

Finally, Plaintiff has raised a dispute regarding their contention that there were no ready alternatives: Defendants previously provided non-CFM Jewish inmates with all Passover meals, and intend to do so in 2023.

For all of these reasons, the motions for summary judgment should be denied with respect to Plaintiff's First Amendment Free Exercise Clause claim.

**d. RLUIPA – Does the burden further a compelling government interest by the least restrictive means?**

Again, assuming Plaintiff's religious exercise was substantially burdened, the burden shifts to Defendants to show that it furthers a "compelling government interest" and does so "by the least restrictive means." This is an "exceptionally demanding" standard, which requires the Defendants to show that they "lack other means of achieving [the] desired goal without imposing a substantial burden on the exercise of religion by the objecting part[y]." *Holt*, 135 S.Ct. at 858 (internal quotation marks and citation omitted). "RLUIPA requires a 'more focused' inquiry that looks at the challenged regulation's application to 'the particular claimant whose sincere exercise of religion is being substantially burdened.'" *Johnson*, 23 F.4th at 1217 (quoting *Holt*, 574 U.S. at 363). "[T]he government may not satisfy the compelling interest test by pointing to a general interest—it must show the 'marginal interest in enforcing' the [policy at issue against the particular inmate.]" *Id.*

For the reasons set forth with respect to Plaintiff's Free Exercise Clause claim, Defendants have likewise not demonstrated that this directive was supported by a compelling government interest, or that the directive issued was the least restrictive means of achieving that interest.

**e. RLUIPA and Injunctive Relief**

Defendants are correct that Plaintiff cannot recover damages under RLUIPA. *Sossamon v. Texas*, 536 U.S. 277, 285 (2011); *Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014); *Jones v. Slade*, 23 F.4th 1124, n. 4 (9th Cir. 2022). Instead, a Plaintiff may only sue defendants under RLUIPA in their official capacities for prospective injunctive relief. *Jones*, 23 F.4th at n. 4.

Defendants argue that any claim for injunctive relief is moot because NDOC will not be requiring inmates to sign up for CFM to receive their Passover meals beginning in 2023.

The court disagrees that Plaintiff's claim for injunctive relief is moot in light of NDOC's decision to stop requiring Jewish inmates to sign up for CFM to receive all Passover meals.

"A case becomes moot—and therefore on longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Rosebrock v. Mathis*, 745 F.3d 963, 971 (9th Cir. 2014) (internal quotation marks and citations omitted). "The voluntary cessation of challenged conduct does not ordinarily render a case moot because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed." *Id*. (quotation marks and citations omitted). "But voluntary cessation can yield mootness if a 'stringent' standard is met: 'A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Id*. (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)). "The party asserting mootness bears a 'heavy burden'" "of showing that the challenged conduct cannot reasonably be expected to start up again." *Id*. (citations omitted).

Here, Williams states that NDOC is in the process of updating its ARs to reflect that Jewish inmates need not sign up for CFM to receive their Passover meals. However, the court has received no update regarding the status of the AR, or any further reassurance that NDOC will not change its mind and utilize this directive again. (ECF No. 45-2 ¶ 8.) Therefore, at this time, the court finds Defendants have not met their heavy burden of demonstrating the challenged conduct cannot be reasonably expected to start up again.

Inmates fears of NDOC resuming challenged conduct have been borne out recently at this same prison facility: LCC. In *Elmajzoub v Davis,* No. 3:19-cv-00196-MMD-CSD, the NDOC defendants represented in their motion for summary judgment that the offending conduct (not holding the Muslim Jumu'ah services at the correct date/time) had been rectified and Jumu'ah services had been reinstated on early Friday afternoons at LCC, only to later admit that the representation was incorrect. This led the court entering a permanent injunction, which the defendants were later found in contempt for violating. Therefore, absent fulfillment of their heavy burden of establishing the challenged conduct will not be resumed, the court is unwilling to recommend that Plaintiff's claim for injunctive relief under RLUIPA is moot.

**D. Establishment Clause**

"The Establishment Clause, applicable to state action by incorporation through the Fourteenth Amendment, states that Congress shall make no law respecting an establishment of religion." *Hartmann,* 707 F.3d at 1125 (internal citation and quotation marks omitted). "This clause 'means at least' that '[n]either a state nor the Federal Government...can pass laws which aid one religion, aid all religions, or prefer one religion over another.'" *Id*. (citation omitted). "[A] prison regulation accommodating inmates' rights under the First Amendment must do so without unduly preferring one religion over another[.]" *Id*. (citation omitted).

Plaintiff alleges that Orthodox/Rabbinical Jews got their Passover meals in 2020, and not just their last meal like Messianic Jews. On the other hand, Williams states the March 3, 2020, directive regarding Passover meals applied equally to all Jewish inmates, whether Messianic or Orthodox. (Williams Decl., ECF No. 48-7 at 3 ¶ 6.)

Plaintiff supports his position with a declaration from inmate Justin Langford, who states that in 2020, he was not on the CFM, but he received all 8-days of meals for Passover. (ECF No.

50 at 10.) Langford does not state, however, whether he is Orthodox/Rabbinical or Messianic, for the court to determine that Defendants preferred one religion over another. With respect to Defendants' motion, neither the emails from Snyder, the culinary memo, nor the March 3, 2020, memorandum from Williams differentiate between Messianic and Orthodox/Rabbinical Jews.

The court finds that Plaintiff has not met his burden on summary judgment, and he has not raised a genuine dispute of material fact in response to Defendants' motion with respect to his Establishment Clause claim. Therefore, Plaintiff's motion should be denied, and Defendants' motion should be granted, with respect to this claim.

**E. Personal Participation of Garrett and Waters**

Both Garrett and Waters submit declarations stating they have no involvement in devising nor implementing NDOC religious policies, procedures, directives, or regulations. They are also not members of the Religious Review Team (RRT). Their only involvement was in denying Plaintiff's informal and first level grievances. (Garrett Decl., ECF No. 48-11, Waters Decl., ECF No. 48-12.)

In *Snow v. McDaniel*, the Ninth Circuit found that where the warden and his assistants were aware of grievances regarding inappropriate medical treatment and failed to act to prevent further harm, they were not entitled to summary judgment. *Snow v. McDaniel*, 681 F.3d 978, 989 (9th Cir. 2012) (citation and quotation marks omitted), *overruled on other grounds in Peralta v. Dillard*, 744 F.3d 1076, 1083 (9th Cir. 2014).

Where a grievance puts a prison official on notice of an ongoing violation, the prison official's knowing failure to respond or intervene may establish liability under section 1983. *See Henderson v. Muniz*, 196 F.Supp.3d 1092, 1104 (N.D. Cal. Jul. 20, 2016). By way of example: "If a defendant only denied an inmate appeal about a religious problem that had already occurred

1   and was complete (*e.g.* an exclusion of the inmate from a religious ceremony on a past date),

2   there would be no liability for a constitutional violation; however, where the problem is an

3   ongoing religious need and the request is made in an inmate appeal to remedy the ongoing

4   problem, liability can be based on the denial of an inmate appeal, just as it could be based on the

5   denial of a verbal request from the inmate." *Id.*

6       Plaintiff sent his informal grievance on February 7, 2020. It is stamped received by LCC

7   on February 10, 2020. Waters responded on April 8, 2020. (ECF No. 48-6 at 2, 7.)

8       Plaintiff submitted his first level grievance on March 31, 2020 (after he had not received

9   a timely response to his informal level grievance). It is signed by the grievance coordinator and

10  stamped received by LCC on April 1, 2020. (ECF No. 48-6 at 8.) For unexplained reasons,

11  Garrett did not respond until November 24, 2020. (*Id.* at 10.)

12      The court takes judicial notice of the fact that Passover began on April 8 and continued

13  through April 16, 2020 (which is also reflected in the record).

14      Waters was clearly questioning the sincerity of Plaintiff's religious belief in Passover

15  meals in her response denying Plaintiff's grievance: "It appears that your desire to participate in

16  the Kosher for Passover meals is a matter of personal preference." (ECF No. 48-6.) While

17  Waters was not a member of the RRT, there is a question regarding whether she could have

18  taken *some* action to address Plaintiff's claim that his religious rights were being denied.

19      It is unclear when Garrett *received* Plaintiff's first level grievance, but it was submitted

20  prior to the beginning of Passover. Therefore, there is a factual issue regarding whether Garrett

21  could have done anything in response to the claimed violation of Plaintiff's religious rights.

22      To the extent Waters and Garrett move for summary judgment based on a lack of

23  personal participation, their motion should be denied.

**F. Qualified Immunity**

"In evaluating a grant of qualified immunity, a court considers whether (1) the state actor's conduct violated a constitutional right and (2) the right was clearly established at the time of the alleged misconduct." *Gordon v. County of Orange*, 6 F.4th 961, 967-68 (9th Cir. 2021) (citing *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223 (2009)). "Either question may be addressed first, and if the answer to either is 'no,' then the state actor cannot be held liable for damages." *Id*. at 968 (citation omitted).

Taking the facts in the light most favorable to Plaintiff, a fact finder could conclude that Defendants' violated RLUIPA as well as the First Amendment's Free Exercise Clause. The facts, viewed in Plaintiff's favor show that Plaintiff was required to sign up for CFM to obtain all of his Passover meals, even though CFM was not a tenet of his own faith. In addition, while the March 3, 2020 memorandum offered a one-time exception for non-CFM participants, NDOC may not have been able to secure Passover meals for those inmates. Finally, viewing the facts in the light most favorable to Plaintiff, the directive was not reasonably related to the asserted correctional interest. Nor did it further a compelling government interest by the least restrictive means.

Next, it was clearly established that a prison official violates the Free Exercise Clause if he or she substantially burdens an inmate's religious exercise, and the basis for burdening the religious exercise is not reasonably related to legitimate penological interests. *Hartmann*, 707 F.3d at 1122; *Shakur*, 514 F.3d at 883-84.

It was also clearly established that a prison official violates RLUIPA if he or she substantially burdens an inmate's religious practice and the basis for the burden is not supported

1 by a compelling government interest, or if it is, that compelling government interest is not

2 achieved by the least restrictive means. *Holt,* 574 U.S. 352; *Hartmann*, 707 F.3d at 1124.

### IV. RECOMMENDATION

4      IT IS HEREBY RECOMMENDED that the District Judge enter an order **DENYING**

5 Plaintiff's motion for summary judgment (ECF No. 37), and **GRANTING** Defendants' motion

6 for summary judgment (ECF No. 48) as to Plaintiff's Establishment Clause claim, but otherwise

7 **DENYING** Defendants' motion for summary judgment.

8      The parties should be aware of the following:

9      1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to

10 this Report and Recommendation within fourteen days of being served with a copy of the Report

11 and Recommendation. These objections should be titled "Objections to Magistrate Judge's

12 Report and Recommendation" and should be accompanied by points and authorities for

13 consideration by the district judge.

14      2. That this Report and Recommendation is not an appealable order and that any notice of

15 appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed

16 until entry of judgment by the district court.

18 Dated: March 10, 2023

20 Craig S. Denney
   United States Magistrate Judge